Mr. Justice Bradley
dissenting :
I dissent from tbe judgment of the court in this case. In my view tbe case was decided and settled more than fifty years ago. The claim cannot be established without opening that settlement and declaring that a valid contract was made which had been decided not to be a valid contract, but only a mere claim for some equitable allowance which was in fact made and accepted at that time.
Piatt, the original claimant, was an army contractor in the Northwest during the war of 18 L2. Becoming embarrassed by not receiving funds from the Government, and from the great rise in the prices 'of provisions, he threatened to throw up his contract; but the allegation is that at the request of Mr. Monroe, then acting Secretary of War, and upon his assurances that he should not be the loser, he went on, and furnished supplies to a large amount. ' For these supplies he claimed a large allowance beyond the amount stipulated in his contract. The petition then states as follows :
u But your petitioners state that the officers of the Treasury, feeling themselves bound only by what appeared of record in the Department, allowed the said Piatt, in the settlement of his account for rations furnished after the first day of January, 1815, no more than the original contract price per ration. Under these circumstances he brought his claim before the Secretary of War, Mr. Crawford, who would have settled it on the principles for which the said Piatt then contended, and which your petitioners now claim to be legal and just, but that, by reason of what he considered countervailing evidence, he had doubts whether such assurances had ever been given.”
Thus it is seen that there were two sides to the question at that early day, when all the events were fresh, and when Mr. Monroe was living at tbe seat of government, and accessible at any moment.
In 1820 Piatt was arrested for 8-18,230.77, the balance found due to the Government in his accounts, as ascertained by the *180 settlement at the Department. He then brought his*, claim before Congress, and ■ the Judiciary Committee of the Senate reported adverse!y thereto. But on the 8th of May the folio wing act was passed for his relief, to wit:
“AN ACT for the relief of John H. Piatt.
uBe it enacted by the Senate and House of Representatives of the United States in Congress assembled, That the' proper accounting officers of the Treasury Department be, and they are hereby, authorized and required to settle the accounts of John H. Piatt, including his accounts for transportation, on just and equitable principles, giving all due weight and consideration to the settlements and allowances already made, and to the assurances and decisions of the War Department: Provided, That the sum allowed under the said assurances shall not exceed the amount now claimed by the United States, and for which suits have been commenced against the said John H. Piatt.”
Thereupon his accounts were restated under the provisions of the actj and the officers of the Department, after Allowing him the sum of 163,620.48 for provisions furnished to friendly Indians and to distressed settlers of Michigan, (which was entirely outside of his contract, and was afterward paid in full,) allowed liim a credit on the footing of the assurances of Mr. Monroe for $48,230.77, the full amount of the claim for which he had been arrested. He was thereupon discharged from custody on the 25th of J uly, 1820, and died in February, 1822. The present, claim is prosecuted by his representatives.
Upon these facts it seems difficult to resist the conviction that, in the contemplation of both parties, (Piatt and the Government,) this case was then and there forever ended and determined. Between individuals it must necessarily have been so. Had such a disputed and doubtful claim been held by one man against another, and left to arbitration, subject to the condition that no sum should be awarded beyond a certain amount, and had that amouut been awarded and accepted, can there be a- doubt that the award would have been binding and conclusive 1 I think not.
The present case is stronger. Congress proposed to allow Piatt a settlement of his claim by the Treasury Department, in which due weight and consideration should be given to the assurances in question, provided that the sum allowed under *181 them should not exceed the amount claimed by the United States against him, and for which suit had been commenced. He accepted the law, had the benefit of the settlement, and was allowed under the assurances the amount named, which justly canceled the debt for which he was sued and arrested by the Government. Thereupon he was discharged. .The declaration of Congress, thus made binding by the acts of the party, that nothing should be allowed against the Government on that claim beyond a certain amount named, was equivalent to a solemn adjudication. It amounted to a declaration of the Government that it would not suffer itself to be pursued or molested for a greater sum. .Can it now be contended that the act of 1855, constituting the Court of Claims and allowing suits to be brought against the Government on contracts made with it, has opened this adjudication, this settlement and determination of the case? In my judgment, certainly not. The act constituting the Court of Claims was not intended to disturb past adjudications and settlements, and to open afresh claims that had been disposed of. The Court of Claims had no right to go behind the final settlement and attempt to establish the original facts of the case. Its findings of fact, in this respect, were illegal and void. The Government has never consented to be sued on this claim or any claims similarly situated.
The conclusion of law to which the court came, I think, was correct, and the decree should be affirmed.
Swatne, Davis, and Hunt, JJ., concurred in this opinion.